UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 12-CV-00458-UAMH-JRK

HERBERT J.T. WILSON, II,

    Plaintiff,

vs.

JOHN H. RUTHERFORD,
Sheriff of Duval County,
DEPUTY HOLOCHWOST,
Jacksonville Sheriff's Office, and
GLOBAL TEL-LINK CORPORATION,

    Defendants.
_____/

## DEFENDANT GLOBAL TEL-LINK'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE

Defendant Global Tel-Link Corporation ("GTL"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the Third Amended Complaint ("Amended Complaint") [DE-47] with prejudice of Plaintiff Herbert J.T. Wilson, II ("Plaintiff") for failure to state a cause of action. In support, GTL states:

### INTRODUCTION

Plaintiff's claims are not new. *See, e.g., Holloway v. Magness*, 2011 WL 204891, at *1, 4 (E.D. Ark. Jan. 21, 2011) ("This is another in a long line of cases brought by inmates challenging the economic arrangements pursuant to which telephone services are made available to them.") (citing cases). There are a volume of cases identical to this one, and "[n]o court has yet held, on any of these legal theories, that a contract between a telephone company and prison system was unlawful." *Id.* at 4 ("Court challenges to excessive prison telephone rates have

consistently failed to provide relief, and future legal victories are unlikely given current Supreme Court jurisprudence.").

For the same reasons inmate claims have been dismissed in numerous other similar cases, Plaintiff's claims fail and must be dismissed. First, Plaintiff's claims are barred by the "filed rate doctrine," which provides that telecommunication carriers like GTL are prohibited from charging rates or providing services other than as set forth in the "tariff," or schedule, filed with the appropriate regulatory agency, and that the rates in the tariff cannot be changed by contract. Second, Plaintiff's § 1983 claims should be dismissed because Plaintiff cannot establish that by charging inmates for calls, GTL has violated Plaintiff's First, Sixth, or Fourteenth Amendment rights. And third, Plaintiff's state law claims should be dismissed because Plaintiff wholly fails to allege any facts which support a claim for common law fraud or under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").[1]

Because the Amended Complaint represents Plaintiff's second attempt to state a cause of action against GTL, the Court should dismiss Plaintiff's claims with prejudice.

## PLAINTIFF'S ALLEGATIONS

1. Plaintiff alleges that at all times relevant to the Amended Complaint he was a pretrial detainee at the Duval County Pre-Trial Detention Facility ("PTDF"), located at 500 E. Adams Street, Jacksonville, Florida. *See* Amended Complaint [DE-47] at ¶ 2.

2. Plaintiff alleges that he was detained at the PTDF from July 6, 2010, through July 28, 2011, and that while detained utilized the inmate telephone system to contact his criminal defense attorney and family. *Id.* at ¶ 9.

---

[1] Further, GTL adopts the arguments set forth in Defendants, City of Jacksonville, Sheriff John H. Rutherford and Deputy Timothy C. Holochwost's, Motion to Dismiss Third Amended Complaint with Prejudice [D.E. 49] to the extent they are applicable to the claims raised against GTL.

3. Plaintiff further alleges that GTL provides telecommunications equipment and services to the PTDF "pursuant to a telephone service agreement executed between [GTL] and Sheriff Rutherford." *Id.* at ¶ 7.

4. Plaintiff alleges that while detained at the PTDF, he utilized the telephone services supplied by GTL and was charged for those services. *Id.* at ¶¶ 9-10.

5. Plaintiff alleges GTL charged Plaintiff "excessive, exorbitant and unreasonable rates for calls placed through the inmate telephone system at the [PTDF]." *Id.* at ¶ 9.

6. Plaintiff also alleges that GTL's rates "represent a gross disparity for rates charged for like telephone calls made by similarly situated inmates in the Florida Department of Corrections, and other jails and correctional facilities in the United States, including facilities that contract with [GTL]." *Id.* at ¶ 12. However, Plaintiff fails to specify how GTL's rates are unreasonable, unconscionable, and excessive, or what rates others charge for similar services.

7. Plaintiff further alleges that GTL somehow violated Plaintiff's First Amendment rights because family and friends were not willing to pay the rates GTL charges for inmate calls. *Id.* at ¶¶ 13, 20.

8. Plaintiff also alleges that GTL violated his Sixth Amendment rights because the rates GTL charges obstructed his ability to contact his criminal defense attorney and thus his ability to prepare his defense. *Id.* at ¶ 21.

9. Plaintiff further alleges that GTL has violated FDUTPA by engaging in a "pattern and practice of charging unreasonable, excessive, and unconscionable rates" which constitute "acts and practices and unfair or deceptive trade practices in the conduct of trade or commerce." *Id.* at ¶ 19.

10. Although Plaintiff attempts to assert a claim against GTL based on the City of Jacksonville's, Jacksonville Sheriff's Office's, Sheriff Rutherford's (the "Sheriff Defendants") alleged recording of Plaintiff's calls with his criminal counsel, *see id.* at 22-31, Plaintiff alleges no facts to support this claim against *GTL* or any facts that GTL engaged in any misconduct. *See id.* Rather, Plaintiff alleges that GTL actually provides a system for allowing unmonitored calls to attorneys but that the Sheriff Defendants chose not to utilize this service. *Id.* at ¶¶ 29-30.

11. Plaintiff requests monetary damages for GTL's alleged violations of Plaintiff's civil rights, "federal and state law[,] and for common law fraud." *Id.* at ¶ 1.

## ARGUMENT

### I. The Standard of Review.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pled allegations in the complaint. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). No such presumptive truthfulness attaches, however, to conclusory allegations or unwarranted deductions of fact. *See South Florida Water Mgmt. District v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "The plausibility standard," the Court continued,

"is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation omitted).

Additionally, where a plaintiff purports to bring a claim sounding in fraud, Rule 9(b)'s particularity requirement applies. To satisfy the pleading requirements of Rule 9(b) the complaint must state: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

## II. Plaintiff's Amended Complaint Should be Dismissed as to GTL.

### A. The Filed Rate Doctrine Bars Plaintiff's Claims.

The Federal Communications Act of 1934 (the "FCA") and Florida law require telecommunication carriers such as GTL to file schedules, or "tariffs," with the appropriate regulatory agency setting forth the telecommunication services they offer and the rates applied to those services. *See* 47 U.S.C. § 203(a); § 364.04, Fla. Stat. The "filed rate doctrine" provides that carriers like GTL are prohibited from charging rates or providing services other than as set forth in the applicable tariff. *See AT&T Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 222 (1998). The filed rate doctrine applies whether the rate in question is approved by a federal or state agency. *See Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994) ("[C]ourts

5

have uniformly held . . . that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies.").

The filed rate doctrine not only prohibits regulated entities from charging rates for its services that vary from the tariff rate, but it also prohibits a subscriber from avoiding the tariff rate "by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate." *Reiter v. Cooper*, 507 U.S. 258, 266 (1993). The filed tariff is "the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff." *Central Office*, 524 U.S. at 230 (Rehnquist, C.J., concurring). "The rights and liabilities defined by the tariff cannot be varied or enlarged by either contract or tort of the common carrier." *Id.* at 227; *see also Town of Norwood v. Federal Energy Regulatory Comm'n*, 217 F.3d 24, 28 (1st Cir. 2000) (explaining that, under the filed rate doctrine, "filings with [a] regulatory agency prevail over unfiled contracts or other claims seeking different rates or terms than those reflected with the agency.").

Two principles underline the filed rate doctrine: (1) nondiscrimination; and (2) nonjusticiability. *See Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1316 (11th Cir. 2004). "The purpose of the nondiscrimination principle underlying the filed rate doctrine is to ensure that all telecommunications customers are charged the same rate for their service - the rate filed with and approved by the FCC." *Id.* The nondiscrimination principle thus serves to bar a plaintiff's claim which, "if successful, would have the effect of changing the filed tariff." *Id.* (internal quotation omitted). "Even if such a challenge does not, in theory, attack the filed rate, an award of damages to the customer-plaintiff would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers." *Id.*

"The purpose of the nonjusticiability principle underlying the filed rate doctrine is to preserve the FCC's primary jurisdiction over determinations regarding the reasonableness of rates charged by regulated carriers." *Id.* at 1317. "Thus, even if a claim does not directly attack the filed rate, an award of damages to customers that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine." *Id.*

Because Plaintiff seeks an award of money damages for the rates charged by GTL for telephone services, Plaintiff's claims implicate the nondiscrimination and nonjusticiability principles underlying the filed rate doctrine. *See id.* at 1316-17. Accordingly, all of Plaintiff's claims, including those for money damages under Florida common law and FDUTPA, are barred under the filed rate doctrine and must be dismissed as a matter of law. *See Pfeil v. Sprint Nextel Corp.*, 284 Fed. Appx. 640, 642-43 (11th Cir. 2008) (affirming dismissal of equitable and legal claims, including a claim under FDUTPA, pursuant to the filed rate doctrine); *Ray v. Evercom Systems, Inc.*, No. 4:05-cv-2904-RBH, 2009 WL 2997607, at *13-16 (D.S.C. Sept. 15, 2009) (dismissing all claims against inmate telephone service provider, including constitutional-based claims, pursuant to the filed rate doctrine); *Byrd v. Goord*, No. 00 Civ. 2135(GBD), 2005 WL 2086321, at *7 (S.D.N.Y. Aug. 29, 2005) (dismissing all constitutional-based claims against inmate telephone service provider pursuant to the filed rate doctrine). Therefore, based on the filed rate doctrine, the Amended Complaint must be dismissed in its entirety as a matter of law.

### B. Plaintiff Cannot Allege a Constitutional Violation.

To state a claim under 42 U.S.C. § 1983 Plaintiff must allege a violation of a constitutional right which GTL committed acting under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). In essence, Plaintiff's § 1983 claims against GTL are premised on: (1) GTL having charged Plaintiff for his inmate telephone usage which,

according to Plaintiff, is a violation of his First Amendment right to speak with family and friends, *see* Amended Complaint at ¶¶ 13, 20; (2) GTL violating his Sixth Amendment right to assistance of counsel because GTL's rates "unduly inhibited the plaintiff from contacting his criminal defense attorney," *see id.* at ¶¶ 15, 21; and (3) GTL violating the Equal Protection Clause of the Fourteenth Amendment by discriminating against inmates as an alleged "class" of citizens as opposed to non-inmates, *see id.* at ¶¶ 32-36. Plaintiff's allegations, however, cannot establish a First, Sixth, or Fourteenth Amendment violation.

### 1. Plaintiff Fails to Allege a First Amendment Violation

Prisoners have no *per se* constitutional right to utilize the telephone. *See United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000); *see also Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996) (holding that prison officials may impose use restrictions on an inmate's telephone usage). Rather, "[u]nder the First Amendment, pre-trial detainees have a right to 'at least some' telephone access in order to contact friends and family, subject to reasonable restrictions based on legitimate order and security concerns." *Abdoulaye v. Brown*, No. 1:07-CV-3071-WCO, 2010 WL 3768031, at *5 (N.D.Ga. Sept. 17, 2010). Because alternative communication methods are available to inmates, such as Plaintiff, the courts have held that the ability to receive visitation at the facility and to correspond with friends and family are sufficient alternatives such that any use restrictions imposed on the detention center's telephone systems do not violate the First Amendment. *See id.* Plaintiff does not allege that any defendant, let alone GTL, withheld and/or unduly restricted Plaintiff's visitation rights from his family, friends, or his defense counsel.

Moreover, "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." *Johnson v. State of California*, 207 F.3d 650, 656 (9th

Cir. 2000). For this reason, courts have routinely dismissed "First Amendment claims where the plaintiff challenged the telephone rate charged by a correctional facility." *Boyer v. Taylor*, No. 06-694-GMS, 2007 WL 2049905, at *9 (D. Del. Nov. 14, 2007) (collecting cases). As in *Boyer*, Plaintiff here "alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether." *Id.* To the extent Plaintiff attempts to allege claims on behalf of his family and friends for the charges GTL imposes, *see* Amended Complaint at ¶13, Plaintiff lacks standing to do so. *See Boyer*, 2007 WL 2049905 at *9. Accordingly, Plaintiff does not a state a claim against GTL for violation of his First Amendment rights.

### 2. Plaintiff Fails to Allege a Sixth Amendment Violation

Plaintiff also cannot state a violation of his Sixth Amendment rights. Plaintiff alleges that the telephone usage charges imposed "unduly inhibited the plaintiff from contacting his criminal defense attorney, which obstructed his ability to help prepare his defense . . . ." Amended Complaint at ¶ 21. Plaintiff's § 1983 allegations with respect to the alleged Sixth Amendment violations requires that this Court imply the invalidity of Plaintiff's subsequent conviction. Such an invitation, however, runs afoul of the *Heck* doctrine.[2] Under *Heck*, a plaintiff may not pursue a § 1983 claim if succeeding on such a claim would necessarily imply the invalidity of the plaintiff's prior conviction. *See Heck*, 512 U.S. at 486-87; *Price v. McNeil*, 340 Fed. Appx. 581, 583 (11th Cir. 2009). Because Plaintiff's alleged Sixth Amendment violation would necessarily imply the invalidity of his prior conviction, Plaintiff's § 1983 claim is barred under *Heck*. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (rejecting § 1983 claim based on telephone use as Sixth Amendment violation based on *Heck* doctrine).

---

[2] So-called after the Supreme Court's seminal decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 3. Plaintiff Fails to Allege an Equal Protection Clause Violation

Plaintiff also appears to allege an Equal Protection Clause claim under the Fourteenth Amendment. Amended Complaint at ¶¶ 32-36 (alleging GTL and the Sheriff Defendants discriminate against inmates as a class based on telephone charges imposed on inmates versus non-inmates). Plaintiff's Equal Protection Clause claim must be dismissed because Plaintiff fails to allege that he is a member of a protected class or that GTL violated Plaintiff's constitutionally protected interest.

To state an Equal Protection Clause claim under the Fourteenth Amendment Plaintiff must allege: (1) that he similarly situated with other persons who are treated differently than him; and (2) the reason for the different treatment is based on a constitutionally protected interest. *See Thomas v. Georgia State Bd. of Pardons & Paroles*, 881 F.2d 1032, 1034 n.3 (11th Cir. 1989). Courts considering Equal Protection Clause claims based on inmate telephone charges have routinely held that inmates are not a protected "class" for Fourteenth Amendment purposes. *See McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1000-01 (S.D. Ohio 2003) (to state an Equal Protection Clause claim an inmate must allege that he or she is treated differently from other inmates, not that he or she is treated differently than non-inmates); *Daleure v. Commonwealth of Kentucky*, 119 F. Supp. 2d 683, 691 (W.D.Ky. 2000) (concluding that inmates are not an identifiable protected class for Fourteenth Amendment purposes in comparison to non-inmates); *see also Gilmore v. County of Douglas, State of Neb.*, 406 F.3d 935, 938 (8th Cir. 2005) (agreeing with Equal Protection Clause analysis stated in *Daleure*); *Boglin v. Thomas*, No. CA 00-0035-CB-C, 2001 WL 102337, at *9 (S.D. Ala. Jan. 2, 2001) (no Equal Protection Clause claim stated where inmate failed to allege he was treated "differently from similarly situated

prisoners because of his race, religion, national origin, poverty, or other constitutionally-protected interest"). Accordingly, Plaintiff's Equal Protection Clause claim must be dismissed because Plaintiff fails to allege a cognizable protected class for Equal Protection Clause purposes.

Furthermore, Plaintiff's Equal Protection Clause claim fails because Plaintiff does not allege he was treated differently based on a constitutionally protected interest. As set forth in Part II.B.1., *supra*, pre-trial detainees have no *per se* constitutional right to telephone access and Plaintiff fails to allege he was deprived of other means of communication, such as visitation or correspondence. For this reason too, Plaintiff's Equal Protection Clause claim fails and must be dismissed. *See Abdoulaye*, 2010 WL 3768031 at *5; *Boyer*, 2007 WL 2049905 at *9.

### 4. GTL is a Private Entity Who Does Not Operate Under Color of State Law

Even if Plaintiff has alleged a constitutional violation under either the First, Sixth, or Fourteenth Amendments (which he has not), Plaintiff's § 1983 claims against GTL nonetheless fail because GTL does not operate under color of state law.

A private entity acts "under color of state law" if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be treated as that of the state itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). A private entity can also act under color of state law if it performs functions that have historically and *exclusively* been performed by the government. *See, e.g., Nixon v. Condon*, 286 U.S. 73 (1932) (oversight of elections), *Terry v. Adams*, 345 U.S. 461 (1953) (oversight of elections); *Marsh v. Alabama*, 326 U.S. 501 (1946) (operation of a local government).

Here, even if Plaintiff were to have pled sufficient facts to allege a constitutional violation, Plaintiff has not - and cannot - establish a "close nexus" between GTL and the state for

purposes of a §1983 action. "Acts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn,* 457 U.S. 830, 841 (1982). GTL, a private entity, does not become a public entity simply because it contracts with the Jacksonville Sheriff's Office for telephone services.

Further, although correctional facilities are *sometimes* operated by the government, they are not traditional government functions because they "have never been exclusively public. Private individuals operated local jails in the 18th century . . ., and private contractors were heavily involved in prison management in the 19th century." *Richardson v. McKnight,* 521 U.S. 399, 405 (1997). Similarly, the provision of telephone and other utility services, whether among inmates or the population at large, has never been a function traditionally and exclusively reserved to the state. *See Jackson,* 419 U.S. at 353; *see also Florida Dep't of Revenue v. City of Gainesville,* 918 So. 2d 250, 265 (Fla. 2005) ("Unlike electrical power and public parks, telecommunications services have historically been provided by the private sector.").

GTL is a private entity with no official ownership or control by any federal or state government. As mentioned, GTL was merely the provider of telephone services for the PTDF. Therefore, Plaintiff's Amended Complaint fails the second prong of the Supreme Court's *Sullivan* standard, as GTL does not - and did not - act "under color of state law" for any action relevant to this dispute. As such, this Court should dismiss Plaintiff's § 1983 claims against GTL as a matter of law.

### D.   Plaintiff's State Law Claims Should be Dismissed.

Plaintiff has asserted claims against GTL for common law fraud and FDUTPA, both of which fail as a matter of law.

### 1. Plaintiff's Fraud Claim Fails

Plaintiff appears to assert a common law fraud claim against GTL because the rates charged for inmate telephone calls are allegedly "excessive, exorbitant, and unreasonable," and are in "gross disparity" with respect to the rates charged by other telephone service providers for like calls. Amended Complaint at ¶¶ 9, 12. "The elements of common law fraud are 1) a false statement of fact, 2) known by the person making the statement to be false at the time it was made, 3) made for the purpose of inducing another to act in reliance thereon, 4) action by the other person in reliance on the correctness of the statement, and 5) resulting damage to the other person." *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002). Additionally, Rule 9(b) requires that Plaintiff plead his common law fraud claim with particularity. "Under this rule, Plaintiff must specifically identify the individuals who made the alleged misrepresentation, the time of the alleged fraud, and the place of the alleged fraud." *Id.*

Plaintiff's common law fraud claim fails because Plaintiff does not plead what statement of fact GTL made to him, which GTL knew to be false, which GTL made for the purpose of inducing Plaintiff's reliance, that Plaintiff relied on such statement, and that as a result Plaintiff suffered damages. All Plaintiff alleges is that GTL allegedly charges excessive rates for inmate telephone calls. Plaintiff thus fails to properly allege a claim for common law fraud against GTL as Plaintiff does not allege any of the requisite elements, let alone the who, what, where, and when of Plaintiff's fraud claim. Accordingly, Plaintiff's claim for common law fraud should be dismissed. *See Tucci*, 215 F. Supp. 2d at 1302.

### 2. Plaintiff's FDUTPA Claim Fails

A FDUTPA claim consists of three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Kia Motors of Am. Corp. v. Butler*, 985 So. 2d 1133,

13

1140 (Fla. 3d DCA 2008). "A deceptive practice is one that is likely to mislead consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (internal quotation marks omitted). An "unfair practice," in turn, is defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (quoting *Samuels v. King Motors Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotation marks omitted)).

Here, Plaintiff fails to plead the existence of a deceptive act or unfair practice. Plaintiff only alleges, in conclusory fashion, that GTL's charges for inmate telephone calls are "unreasonable, excessive, and unconscionable." Amended Complaint at ¶ 19. In addition to failing to plead any ultimate facts in support of this conclusory allegation, Plaintiff fails to allege how GTL's telephone rates mislead consumers. To be sure, Plaintiff alleges not that he was misled with respect to the charges imposed, but that rather GTL and the Jacksonville Sheriff's Office are allegedly overcharging inmates. *See id.* As a result, Plaintiff fails to allege that GTL has engaged in a deceptive practice.

Plaintiff also fails to allege how GTL's rates are immoral, unethical, or oppressive. As noted above, prisoners are not entitled to any specific rate for telephone calls. *See Johnson*, 207 F.3d at 656. And although Plaintiff alleges that the rates GTL charges are in "gross disparity" with respect to the rates charged by other telephone service providers for like calls, Plaintiff does not allege any facts in support of this conclusory allegation. There is certainly nothing immoral about a telecommunications carrier, such as GTL, charging inmates for the use of its services. *See, e.g., Johnson*, 207 F.3d at 656; *Holloway*, 2011 WL 204891 at *4 ("No court has yet held, on any of these legal theories, that a contract between a telephone company and prison system

14

was unlawful."). *See also Pfeil*, 284 Fed. Appx. at 643 (11th Cir. 2008) (affirming dismissal of FDUTPA claim pursuant to the filed rate doctrine).

For these reasons, Plaintiff's FDUTPA claim must be dismissed as a matter of law.

### E.   Plaintiff's Claims Against GTL Should be Dismissed with Prejudice.

Plaintiff's Amended Complaint represents Plaintiff's second attempt to state causes of action against GTL premised on federal and state law. As stated in GTL's Motion to Dismiss Plaintiff's Second Amended Complaint [DE-38] and this Motion, Plaintiff's claims against GTL are barred as a matter of law pursuant to the filed rate doctrine. *See* DE-38 at 5-7; Part II.A., *supra*. Even assuming the filed rate doctrine does not bar all of Plaintiff's claims against GTL, Plaintiff nonetheless fails as a matter of law to state § 1983 claims under the First, Sixth, and Fourteenth Amendments, and Plaintiff woefully fails to allege state law claims based on common law fraud or FDUTPA against GTL. The Court has provided Plaintiff sufficient opportunity to plead his claims and, having failed to do so, the Court should dismiss Plaintiff's claims against GTL with prejudice. *See Jackson v. Genesys Credit Management*, No. 06-61500-CIV, 2007 WL 4181024, at *4 (S.D. Fla. Nov. 21, 2007) (dismissing claims with prejudice after *pro se* plaintiff was afforded multiple attempts to plead); *see also Shell v. U.S. Dep't of Housing & Urban Dev.*, 355 Fed. Appx. 300, 307-08 (11th Cir. 2009) (affirming dismissal with prejudice where plaintiff was provided multiple attempts to state a cause action and failed to do so).

## CONCLUSION

Based on the foregoing, GTL requests that the Court dismiss Plaintiff's Third Amended Complaint with prejudice.

DATE: November 21, 2012

                        **GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222

By: s/ Lorie M. Gleim
Lorie M. Gleim (Fla. Bar No. 0069231)
gleiml@gtlaw.com
Gerardo J. Rodriguez-Albizu (Fla Bar No. 61685)
rodriguezalbizug@gtlaw.com

*Attorneys for Defendant Global Tel Link Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                    s/ Lorie M. Gleim
                                      Lorie M. Gleim

## SERVICE LIST

**Herbert J.T. Wilson, II v. John H. Rutherford,** *et al.*
**Case No. 12-CV-00458-UAMH-JRK**
**United States District Court, Middle District of Florida**

Herbert J.T. Wilson, II
#609479
Suwanee Correctional Institution
5964 U.S. Highway 90
Live Oak, Florida  32060
Service by U.S. Mail

Craig D. Feiser
Assistant General Counsel
City of Jacksonville,
    Office of General Counsel
117 West Duval Street
Suite 480
Jacksonville, Florida 32202
Tel: (904) 630-1700
Service by CM/ECF