UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT J. T. WILSON, II,

                    Plaintiff,

v.                                 Case No. 3:12-cv-458-J-99MMH-JRK

THE CONSOLIDATED CITY OF
JACKSONVILLE, et al.,[1]

                    Defendants.

_____

### REPORT AND RECOMMENDATION[2]

#### I.  Status

      Plaintiff, a former inmate of the Florida Department of Corrections,[3] is proceeding *pro se* on a Third Amended Complaint

---

    [1] In the operative Third Amended Complaint, the style of the case includes the Jacksonville Sheriff's Office (JSO).  To the extent Plaintiff is attempting to name the JSO as a Defendant, the JSO is not a proper party to the lawsuit because under Florida law the Sheriff's department is not a legal entity that can be sued. Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992).  The JSO, therefore, is due to be dismissed from this action with prejudice.

    [2] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document.  Failure to file a timely objection waives a party's right to a de novo review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

    [3] Plaintiff was previously confined at Suwannee Correctional Institution as a convicted felon.  Recently, Plaintiff was released from the Florida Department of Corrections.  See Florida Department of Corrections, Corrections Offender Network, www.dc.state.fl.us. Plaintiff, however, has failed to provide the Court with his current mailing address.  In an abundance of caution, the Court directs that a copy of this Report and Recommendation be sent to

(Doc. #47).  Two motions are before the Court: Defendants City of Jacksonville, Sheriff John H. Rutherford and Deputy Timothy C. Holochwost's November 14, 2012 Motion to Dismiss Third Amended Complaint With Prejudice ("City/Officers' Motion to Dismiss") (Doc. #49) and Defendant Global Tel-Link's November 21, 2012 Motion to Dismiss Plaintiff's Third Amended Complaint With Prejudice ("GTL's Motion to Dismiss") (Doc. #50).  On December 26, 2012, Plaintiff's Opposition to Defendants' Motions to Dismiss ("Response") (Doc. #52) was filed.[4]

## II.  Third Amended Complaint

The remaining Defendants are the City of Jacksonville, Sheriff John H. Rutherford, Deputy Timothy C. Holochwost, and Global Tel Link ("GTL").  Plaintiff's Third Amended Complaint contains five claims concerning the conditions of his confinement: (1) Defendants[5] City of Jacksonville, Sheriff Rutherford, and GTL illegally charged excessive, exorbitant, and unreasonable rates for collect telephone calls from inmate telephones at the Duval County

---

Plaintiff at his "Stated Residence Upon Release" listed on the Florida Department of Corrections website.

[4] The Court will consider the attachments to the Amended Complaint (Doc. #1, pp. 30-43), as Plaintiff states that he inadvertently omitted the attachments from his Third Amended Complaint.  Response at 10.

[5] Defendant Rutherford is named in his individual and official capacity.  Third Amended Complaint at 2.  Although not specifically stated, Defendant Holochwost is apparently named in his individual capacity only.  Id.

Pretrial Detention Facility ("PTDF") in violation of state and federal law; (2) Defendants City of Jacksonville, Sheriff Rutherford, and GTL recorded all calls made by the Plaintiff to his criminal defense attorney Russell B. Poole, and denied Plaintiff access to unmonitored telecommunication equipment to speak to his counsel, in violation of the United States Constitution and state and federal law; (3) Defendants City of Jacksonville, Sheriff Rutherford, and GTL, in collusion, systematically discriminated against and overcharged a class -- pretrial detainees -- through a policy, practice and custom designed by Defendants to increase rates based solely on the individuals being members of the class (pretrial detainees); (4) Defendants City of Jacksonville and Sheriff Rutherford denied Plaintiff access to his criminal defense attorney in violation of the United States Constitution; and (5) Defendants Timothy Holochwost and Sheriff Rutherford blocked Plaintiff's access to the inmate telephone system in reprisal for Plaintiff's complaining about the PTDF telephone system.  Third Amended Complaint at 3-12.  As relief, Plaintiff seeks "judgment against the defendants both jointly and severely [sic] in a sum within the jurisdictional limits of the court and any other relief the court deems just and proper."  Id. at 12.

The following factual allegations in the Third Amended Complaint are relevant to the claims against Defendants.  From July 6, 2010 to July 28, 2011, Plaintiff was a pretrial detainee

confined in the PTDF. <u>Id.</u> at 2. While confined there, he was charged in excess of $7.00 for a fifteen-minute telephone call from the PTDF to his residence in West Palm Beach, Florida.[6] <u>Id.</u> at 3. Plaintiff's out-of-state relatives refused to receive phone calls from Plaintiff due to the high rates. <u>Id.</u> at 4. Plaintiff's family limited the number of phone calls from Plaintiff because Plaintiff and his family could not afford the rates charged by Defendants. <u>Id.</u> at 5. Plaintiff's friends could not afford or were not willing to pay for phone calls from Plaintiff. <u>Id.</u> Plaintiff's private criminal defense attorney would only accept a limited number of calls at the charged rates.[7] <u>Id.</u> at 4. The rates inhibited Plaintiff's contact with his criminal defense attorney, obstructing the preparation of the defense in Plaintiff's criminal case. <u>Id.</u> at 5. Defendants recorded all telephone calls between Plaintiff and his attorney, Mr. Poole, and Plaintiff was

---

[6] Plaintiff states generally that Defendants City of Jacksonville, Sheriff Rutherford and GTL charge in excess of $21.00 for a fifteen-minute telephone call from PTDF to anywhere in the United States, but he does not specifically state he was charged this amount. Third Amended Complaint at 3.

[7] In comparison, there are no charges for phone calls made from the PTDF to the Duval County Public Defender's Office. Third Amended Complaint at 4.

denied unmonitored telecommunication with his defense counsel.[8]
Id. at 6.

Defendants[9] require each inmate to sign a form stating that
the inmate has been provided with an inmate handbook.   Id.   The
handbook provides an explanation for the procedure for obtaining
unmonitored calls to attorneys.   Id.   The PTDF is frequently out of
handbooks, but each inmate is still required to sign the form
stating the inmate has received a handbook even if he has not been
provided with one.   Id.   Plaintiff submitted requests to the
administration of the PTDF requesting unmonitored calls to his
attorney, but his requests were denied or were unanswered.   Id.   He
also submitted formal grievances through the grievance procedure
complaining of the unavailability of unmonitored calls to
attorneys.   Id.   These grievances received no response.   Id.

Plaintiff wrote letters to the PTDF administration complaining
about the monitored phone calls and mailed the letters to the PTDF
officials.   Id.   In response, the administration advised that a

---

[8] Mr. Poole refused to discuss Plaintiff's criminal case on
the PTDF's telephone system, to visit Plaintiff on a regular basis
because of the amount of time it took for Mr. Poole to process in
and out of the PTDF, and to accept more than one fifteen-minute
phone call per day from Plaintiff due to the cost of the calls and
the rates charged.   Third Amended Complaint at 9.   Based on these
obstacles in developing a criminal defense, Plaintiff contends he
felt obliged to accept the state's plea offer instead of going to
trial.   Id. at 10.

[9] Plaintiff does not specify which Defendants took this
action.

Florida Supreme Court ruling allowed the PTDF to record all calls. Id. at 7.

It is the PTDF's policy, practice, and custom to deny inmates access to unmonitored calls to attorneys, even though Defendants City of Jacksonville and Sheriff Rutherford knew Defendant GTL has the ability to provide unmonitored calls to attorneys. Id. Defendants have elected not to acquire telephone software available from GTL to provide for unmonitored calls with criminal defense attorneys. Id.

The PTDF telephone service agreement allows for the systematic overcharging of pretrial detainees at the PTDF for telephone calls made from the jail, at a rate higher than phone calls for persons not incarcerated. Id. at 8. Phone calls from the PTDF lobby are charged at a much lower rate than the phone calls made from the inmate housing units. Id.

Plaintiff wrote a letter to Sgt. Knight complaining about the operation of the telephone system, including the rates charged. Id. at 11. In response, Sgt. Knight sent Defendant Deputy Holochwost, a JSO telephone administrator, to speak with Plaintiff about his complaints. Id. at 11. Defendant Deputy Holochwost informed Plaintiff in substance that payphones in Florida had been de-regulated, and JSO could charge as much as it desired for use of the PTDF's payphones. Id. Defendant Deputy Holochwost provided Plaintiff with a rate schedule. Id. For a long distance in-state

phone call, the rate is $1.75 surcharge + ($.30 x 15[10]) = $6.25, but Defendants charge in excess of $7.00 for such a phone call.  Id. For a long distance out-of-state phone call, the rate is $3.95 surcharge + ($.89 x 15) = $17.30, but Defendants charge in excess of $21.00 for such a phone call.  Id.

Plaintiff told Defendant Deputy Holochwost that GTL was charging much more than the rates provided for in the rate schedule, and further advised there were no signs by the telephones in the jail explaining how to get refunds or how to make complaints.  Id.  Plaintiff also expressed a desire for unmonitored phone calls to his criminal defense attorney.  Id.  Plaintiff threatened to file a complaint with the courts, and Defendant Deputy Holochwost became angry and left.  Id. at 11-12.   In reprisal for Plaintiff's grievance about the phone system, approximately one week later, Defendant Deputy Holochwost disabled Plaintiff's Personal Identification Number for the GTL phone system, blocking Plaintiff's access to the telephone system.  Id. at 12.  Access was blocked for two weeks, and Plaintiff was unable to contact his attorney or family by telephone during that period. Id.

---

[10] Apparently the figure "15" in these equations is a reference to a telephone call lasting fifteen minutes.   Third Amended Complaint at 11.

### III.   Summary of Arguments

The City/Officers' Motion to Dismiss contains the following arguments: Plaintiff has failed to allege a constitutional violation; there are insufficient allegations of a policy, practice or custom; Defendants are protected by qualified immunity; Plaintiff and his family and friends lack standing to bring claims; Plaintiff has failed to state a claim under the Prison Litigation Reform Act ("PLRA"); Plaintiff has failed to exhaust administrative remedies; and Plaintiff has failed to state claims under other federal or state laws.  City/Officers' Motion to Dismiss at 6-12.

GTL's Motion to Dismiss presents these arguments: Plaintiff's claims are barred by the filed rate doctrine; Plaintiff has failed to allege constitutional violations under the First, Sixth, and Fourteenth (Equal Protection Clause) Amendments; Plaintiff has failed to establish that GTL is acting under color of state law as required by 42 U.S.C. § 1983; and Plaintiff has failed, as a matter of law, in presenting state law claims for common law fraud and for violating the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[11]  GTL's Motion to Dismiss at 5-15.

These arguments form the basis upon which Defendants seek dismissal of this action.

---

[11] For the sake of brevity and for the ease of the reader, if the arguments in the motions to dismiss overlap, they are addressed jointly.

## IV.  Standard of Review - Motion to Dismiss

This Court looks to the allegations in the Third Amended Complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The Eleventh Circuit has explained:

> Generally, under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P.  []8[](a)(2).  To survive a 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).  Simply, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

## V.  Findings of Fact and Conclusions of Law

Defendants assert that Plaintiff Wilson has raised various claims in his Third Amended Complaint that either fail to state a cause of action, are subject to dismissal based upon qualified immunity, are subject to preclusion, are barred, or simply fail as a matter of law.  Defendants seek dismissal of the Third Amended Complaint with prejudice.  For ease of reading, in addressing Defendants' arguments, the Court reorganizes the order in which they are presented.

### A.  Exhaustion of Administrative Remedies

Defendants the City of Jacksonville, Sheriff Rutherford and Deputy Holochwost assert that Plaintiff has failed to exhaust his administrative remedies.  Plaintiff states his grievances were ignored and were not responded to by the PTDF administration.  As a result, he wrote a letter to Sgt. Knight that was responded to by Defendant Deputy Holochwost, in person, not in writing.  Additionally, Plaintiff states he resorted to writing letters and

mailing them to the PTDF officials to obtain responses to his grievances.   He submitted the responses to his letters as attachments to his Amended Complaint (Doc. #1), Plaintiff's Exhibit C, Letters dated October 3, 2011 and October 20, 2011.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), cert. denied, 555 U.S. 1074 (2008); see also Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative

remedies, it must be dismissed." <u>Id.</u> (citing <u>Bryant</u>, 530 F.3d at 1373-74).

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. <u>Bryant</u>, 530 F.3d at 1373-74, 1376; <u>cf</u>. <u>Lawrence</u>, 919 F.2d at 1529.[12] The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Dixon v. United States</u>, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1240 (10th Cir. 2007) ("<u>Jones</u> does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to <u>Jones</u> have all put the burden of proof on defendants, to the extent that they addressed the issue."); <u>id.</u> (citing cases). Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

<u>Id.</u> at 1082-83. If a prisoner does not completely exhaust his remedies prior to initiating a suit in federal court, the complaint must be dismissed. <u>See</u> <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th

---

[12] <u>Lawrence v. Dunbar</u>, 919 F.2d 1525 (11th Cir. 1990) (per curiam).

Cir. 1999) (finding that 42 U.S.C. § 1997e(a) requires that prior to bringing a civil rights action under 42 U.S.C. § 1983, "[a]n inmate incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections[.]").

Moreover, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[13] 286 F.3d, at 1024 (emphasis in original).

Id. at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id.

Accepting the factual allegations in the Response as true, one could argue that Plaintiff's Third Amended Complaint cannot be dismissed for failure to exhaust administrative remedies at the first step of the Turner analysis because Plaintiff claims he did attempt to exhaust his administrative remedies and he had to resort to writing letters to receive responses to his grievances.

---

[13] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied, 537 U.S. 949 (2002).

"Administrative remedies, however, need only be exhausted when they are made available to inmates 'and to be available a remedy must be capable of use for the accomplishment of [its] purpose.'" <u>Palmore v. Tucker</u>, No. 12-11338, 2013 WL 3214689, at *2 (11th Cir. June 26, 2013) (per curiam) (not selected for publication in the Federal Reporter) (alteration in original) (quoting <u>Turner</u>, 541 F.3d at 1084). Here, similar to <u>Palmore</u>, Plaintiff complains that prison officials refused to provide him with the necessary process by refusing to process and respond to his grievances. Thus, the Court proceeds to the second stage of the <u>Turner</u> analysis and makes specific findings to resolve the exhaustion issue.

Defendants simply state that "Defendants have no record of any formal grievance filed by Plaintiff[,]" and then Defendants ask this Court to place the burden on Plaintiff to produce evidence of having filed grievances. City/Officers' Motion to Dismiss at 11. The Court declines to do so. Since Plaintiff's Response conflicts with the factual allegations in City/Officers' Motion to Dismiss, the Court takes the Plaintiff's version of the facts as true. <u>See Turner</u>, 541 F.3d at 1082. The lack of information and explanation given by Defendants leads the Court to find that Defendants have not met their burden of establishing Plaintiff failed to exhaust his administrative remedies. The undersigned concludes that, on the record before the Court, Defendants the City of Jacksonville,

Sheriff Rutherford, and Deputy Holochwost have failed to carry their burden.

### B. Alleged Constitutional Violations

Defendants City of Jacksonville, Sheriff Rutherford, Deputy Holochwost and GTL assert that Plaintiff Wilson has failed to state a claim of constitutional dimension against them. "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Furthermore, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam) (citing Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)).

Generally, Plaintiff complains about excessive phone rates at the PTDF. He contends that these excessive rates inhibited his First Amendment right to communicate with persons outside of jail. Additionally, he asserts that the excessive rates charged unduly

inhibited him from contacting his criminal defense attorney, which obstructed his ability to communicate with defense counsel to assist in preparing his defense, in violation of the Sixth Amendment of the United States Constitution.

### i. First Amendment/Right to Communicate

First, the Court addresses Plaintiff's First Amendment right to communicate claim.  As a pretrial detainee, Plaintiff had "a right to at least some telephone access in order to contact friends and family[.]" Abdoulaye v. Brown, No. 1:07-CV-3071-WCO, 2010 WL 3768031, at *5 (N.D. Ga. Sept. 17, 2010) (not reported in F. Supp. 2d) (citations and internal quotation marks omitted).  An inmate, however, "has no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (citations and quotations omitted).  Moreover, "prisoners are [not] entitled to a specific rate for their telephone calls[,]" and the First Amendment does not require that Plaintiff be given a choice of telephone services. Harrison v. Fed. Bureau of Prisons, 464 F. Supp. 2d 552, 555 (E.D. Va. 2006) (first alteration in original) (quoting Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam)).

Of great import, Plaintiff has not asserted that costs were so exorbitant at the PTDF that he was completely unable to communicate with his defense counsel. See Holloway v. Magness, No. 5:07CV00088 JLH-BD, 2011 WL 204891, at *4 (E.D. Ark. Jan. 21, 2011) (not reported in F. Supp. 2d) (recognizing that no court has held that

a contract between a telephone company and a prison system concerning excessive phone rates was unlawful), aff'd, 666 F.3d 1076 (8th Cir. 2012).  In fact, Plaintiff specifically states in his Third Amended Complaint that his attorney would accept up to one collect call per day from Plaintiff while Plaintiff was confined in the PTDF.  Third Amended Complaint at 9.  The opportunity to have daily telephone communication with counsel undercuts Plaintiff's claim of a constitutional deprivation. Indeed, "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether." Johnson, 207 F.3d at 656; see also Dotson v. Calhoun Cnty. Sheriff's Dep't, No. 1:07-cv-1037, 2008 WL 160622, at *3 (W.D. Mich. Jan. 15, 2008) (not reported in F. Supp. 2d) (finding the plaintiff did not allege complete denial of access to telephone calls (due to high rates) or other communication methods; therefore, he failed to allege a constitutional violation).

Of course, Plaintiff had alternative means of exercising his right to communicate with others because "he could receive visitors and correspond with virtually anyone he wished."[14]   Pope v.

---

[14] Plaintiff's family, friends and criminal defense attorney limited the number of collect phone calls they would accept from Plaintiff while he was incarcerated; however, Plaintiff was not prohibited from attempting to make collect phone calls.  It was up to the recipient of the collect call whether or not to accept the

Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996) (recognizing the First Amendment right to communicate with family and friends, but finding the prison's imposition of a ten-person calling list bearing a reasonable relation to legitimate penological objectives); see also Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002) (relying on Pope as persuasive authority and finding no deprivation of constitutional rights concerning restrictions on telephone usage during the plaintiff's pretrial detention), cert. denied, 538 U.S. 1047 (2003).

Telephone calls are just one of many ways of communicating with those outside of a detention facility.  There were other readily available avenues of communication open to Plaintiff.  In particular, he certainly could have used written correspondence and received visitors at the detention facility.  The fact that visitors, including defense counsel, had to submit to security restrictions and were subjected to some delay in entering and leaving the institution does not amount to a constitutional violation.  There may have been some inconvenience and some delay caused by security measures; however, minor and short-lived impediments, without any evidence of actual prejudice or disadvantage, do not rise to a constitutional deprivation.

---

call, and Plaintiff lacks standing to assert any claim on behalf of family members and friends.  See Boyer v. Taylor, No. 06-694-GMS, 2007 WL 2049905, at *9 (D. Del. July 16, 2007) (not reported in F. Supp. 2d).

Plaintiff, in a vague and conclusory fashion, asserts that he pled guilty to a criminal charge because he was hindered in developing a criminal defense with his lawyer due to communications restrictions and excessive phone rates.   There were many avenues open to Plaintiff to communicate with defense counsel, and a "conclusory allegation of prejudice is meaningless [and] inadequate if it 'offers no specific facts to support these allegations—no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won.'"  Carter v. O'Sullivan, 924 F. Supp. 903, 912 (C.D. Ill. 1996) (quoting Martin v. Davies, 917 F.2d 336, 340 (7th Cir.1990), cert. denied, 501 U.S. 1208 (1991)).

For the foregoing reasons, Plaintiff has failed to state a valid claim under the First Amendment based upon his alleged lack of communication with those outside the PTDF.

### ii. Sixth Amendment

To the extent that Plaintiff is asserting that his defense counsel's representation was ineffective or inadequate (due to counsel limiting the number of collect calls accepted or visits conducted to the detention facility) in violation of the Sixth Amendment to the United States Constitution,[15] such a claim is not

---

[15] Plaintiff contends that he was denied unmonitored telephone services while confined in the PTDF, and he states that his defense counsel was reluctant to speak over the telephone because he was concerned about monitored telecommunication services at the PTDF. Plaintiff admits, however, that the PTDF Inmate Handbook provides

cognizable in this civil rights action under Heck v. Humphrey, 512 U.S. 477 (1994).  See Valdez, 302 F.3d at 1049.  Heck instructs that if a judgment in favor of a plaintiff on his section 1983 claim for money damages would necessarily imply the invalidity of his conviction or sentence, the district court must dismiss the complaint unless the conviction or sentence has already been

---

for a procedure for obtaining unmonitored calls.  Third Amended Complaint at 6.  When Plaintiff expressed his concern about monitored attorney/client phone calls to JSO officials, he was told: "I can advise we do not monitor attorney/client calls, and there is a mechanism for private attorneys to be on the free call system."  Plaintiff's Exhibit C attached to the Amended Complaint (Doc. #1), Letter to Plaintiff from Tara H. Wildes, Chief, JSO, dated October 3, 2011.  Defendants ask that this Court consider documents outside the pleadings. See Defendants' Motion to Dismiss at 3 n.1.  The Court does not, however, consider the documents attached to Defendants, City of Jacksonville, Sheriff Rutherford and Deputy Holochwost's, Motion to Dismiss and to Strike (Doc. #21) filed June 27, 2012, as the Court will limit its review to the pleadings when considering the pending Motions to Dismiss.  See Harper v. Lawrence Co., Ala., 592 F.3d 1227, 1232 n.8 (11th Cir. 2010) (recognizing that pursuant to Rule 12, Fed. R. Civ. P., if matters outside the pleadings, such as these documents, are considered by the court, the court must treat the motion as one for summary judgment).  Even though Plaintiff claims he was not provided with an inmate handbook, which contained the PTDF procedure for obtaining unmonitored calls, Plaintiff states that he requested unmonitored calls to his attorney, but these requests were denied or unanswered.  Regardless, there was a procedure in place for Plaintiff's attorney to obtain unmonitored free telephone calls from the pretrial detention facility.  Defense counsel, however, was reluctant to use the telephone system because of the monitoring capabilities of the system.  His distrust of the PTDF telephone system and his reluctance to use that system did not result in Plaintiff being subjected to a constitutional violation. Again, even if Plaintiff's defense counsel was reluctant to speak freely over the telephone with his client, there were other means of communication open to them, including direct personal contact through visitation or written communication.

invalidated.   Heck, 512 U.S. at 487.   Here, Plaintiff has not
alleged or suggested that his conviction has been invalidated.
Thus, any claim under the Sixth Amendment for money damages is
barred under Heck.

### iii. First Amendment/Retaliation

Plaintiff claims Defendant Deputy Holochwost retaliated
against him for complaining about the telephone system at the
PTDF.[16]  Briefly, Plaintiff alleges that he complained to Defendant
Deputy Holochwost about the phone rates and requested unmonitored
phone calls to his criminal defense attorney.   Plaintiff states he
threatened to file a complaint with the courts, and this angered
Defendant Deputy Holochwost.   Plaintiff alleges that after he filed
grievances about the phone system, Defendant Deputy Holochwost
retaliated against him by blocking Plaintiff's access to the PTDF
phone system by disabling Plaintiff's Personal Identification
Number.   Although Defendant Deputy Holochwost, in City/Officers'
Motion to Dismiss at 3 n.1, asserts that Plaintiff's telephone
account was briefly disabled because "Plaintiff had been
transferred to another facility and his access number was still
being fraudulently used by another inmate[,]" since the matter is

---

[16] In this First Amendment/retaliation claim, Plaintiff states
that Deputy Holochwost and Sheriff Rutherford blocked his access to
the inmate telephone system; however, in the allegations presented
in support of this claim, Plaintiff states that Deputy Holochwost
blocked Plaintiff's access to the inmate telephone system "without
authorization and outside the scope of his duty."   Third Amended
Complaint at 12.   The Court therefore considers this claim of
retaliation to be solely against Deputy Holochwost.

before the Court on a motion to dismiss, the Court must assume the veracity of Plaintiff's "well-pleaded factual allegations." Iqbal, 556 F.3d at 679. Additionally, the Court may not rely on documents outside of the pleadings, as suggested by Defendants, except when reviewing the claim of failure to exhaust administrative remedies or other matters in abatement. Bryant, 530 F.3d at 1376.

With respect to a claim of a First Amendment violation in a prison setting, the rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance or a lawsuit concerning the conditions of his imprisonment. Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (citation omitted); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008); see also Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005) (adopting the standard that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"), cert. denied, 549 U.S. 809 (2006).

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), cert. denied, 133 S. Ct. 445 (2012). There are three elements to such a claim:

> [T]he inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

Id. (first alteration added, remainder in original)(footnote omitted) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).

To establish the third prong, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

Plaintiff has satisfactorily alleged a claim of retaliation under the First Amendment to survive a motion to dismiss. Indeed, the Third Amended Complaint contains sufficient facts to state a

claim of retaliation by Defendant Deputy Holochwost that is plausible on its face.[17]

### iv. Equal Protection

With regard to Plaintiff's apparent equal protection claim (alleging the Defendants "colluded together" to discriminate against inmates as a class based on telephone charges imposed on inmates as opposed to non-inmates), GTL contends that the claim should be dismissed because Plaintiff fails to allege that he is a member of a protected class or that there was a violation of a constitutionally protected interest.  GTL's Motion to Dismiss at 10.

In the Third Amended Complaint, Plaintiff claims Defendants City of Jacksonville, Jacksonville Sheriff's Office, Sheriff Rutherford, and Global Tel-Link executed a telephone service agreement that allows them to overcharge pretrial detainees at the PTDF for calls made from the PTDF at a rate higher than telephone calls made by the non-incarcerated.[18]  Third Amended Complaint at 8.  The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

---

[17] The undersigned does not offer any opinion on whether the claim ultimately will have merit.

[18] Plaintiff does not allege he was treated differently based on a constitutionally protected interest.  Plaintiff has no right to unlimited telephone access, and he was not deprived of other means of communication while confined in the PTDF.

XIV, § 1.   The Due Process Clause of the Fourteenth Amendment states:   "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend XIV, § 1.   "To plead an equal protection claim, a plaintiff must allege that 'through state action, similarly situated persons have been treated disparately.'"   Thorne v. Chairperson Fla. Parole Comm'n, 427 F. App'x 765, 771 (11th Cir. 2011) (per curiam) (quoting Thigpen v. Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231, 1237 (11th Cir. 2000), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

Specifically, "[t]o establish a claim under the Equal Protection Clause, [Plaintiff must] allege that (1) he is similarly situated with other [persons] who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest[.]"   Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 12 (11th Cir. 2010) (per curiam) (citation and quotation omitted).   Apparently Plaintiff is attempting to raise a class-based equal protection claim.   Since "the status of inmates cannot be considered similar to that of non-inmates," McGuire v. Ameritech Servs., Inc., 253 F. Supp. 2d 988, 1001 (S.D. Ohio 2003), Plaintiff has failed to state an equal protection claim under the class-based discrimination strand of the Equal Protection Clause.   "To violate the Equal Protection Clause the state must treat two groups of similarly situated people

differently." <u>Daleure v. Commonwealth of Ky.</u>, 119 F. Supp. 2d 683, 691 (W.D. Ky. 2000).   Here, the alleged conduct only affects one group of people, namely pretrial detainees, all of whom are treated similarly.   Again, the claims of the recipients of these collect calls cannot be raised by Plaintiff.

### v. Conspiracy

To the extent Plaintiff is attempting to raise a conspiracy claim, such a claim is due to be dismissed as insufficient. Plaintiff simply alleges the Defendants "colluded together."  Third Amended Complaint at 8.   This conclusory statement that a conspiracy existed is insufficient. <u>Fullman</u>, 739 F.2d at 556-57; <u>Smith</u>, 368 F. App'x at 12 (recognizing that dismissal is appropriate if the allegations of a conspiracy are conclusory, vague and general).

### Conclusion Regarding Constitutional Claims

Based on the foregoing, as to all Defendants, Plaintiff's First Amendment claims are due to be dismissed, except for the claim of retaliation by Defendant Deputy Holochwost.  In addition, Plaintiff's Sixth Amendment claim against Defendants City of Jacksonville and Sheriff Rutherford is due to be dismissed. Finally, Plaintiff's Equal Protection Clause and conspiracy claims against all Defendants are due to be dismissed.

### C.  Policy, Practice or Custom

In the alternative, Defendant City of Jacksonville and Defendant Sheriff Rutherford in his official capacity raise the insufficiency of Plaintiff's allegations of a policy, practice or custom that was the moving force behind a constitutional violation. Since the City of Jacksonville is a municipal entity, to recover damages under 42 U.S.C. § 1983 against Defendants City of Jacksonville and Sheriff Rutherford in his official capacity, Plaintiff must allege that his constitutional rights were violated, that Defendant City of Jacksonville or Defendant Sheriff Rutherford in his official capacity as a final policy making authority adopted a custom or policy that constituted a deprivation of that constitutional right, and that the custom or policy caused the violation.  Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1349 (11th Cir. 2011) (citations omitted); see Denno v. School Bd. of Volusia Co., Fla., 218 F.3d 1267, 1276 (11th Cir.), cert. denied, 531 U.S. 958 (2000) (recognizing that liability attaches only if the constitutional tort resulted "from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law") (citations omitted).  Defendant City of Jacksonville and Defendant Sheriff Rutherford in his official capacity "may be liable under [section 1983] if the governmental body itself 'subjects' a person to a

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011) (quoting <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 692 (1978)). Defendant City of Jacksonville is "not vicariously liable under § 1983" for its employees' actions,[19] but only responsible for the City of Jacksonville's illegal acts. <u>Id.</u> (citations omitted).

As found earlier, based on the allegations in the Third Amended Complaint, there was no constitutional violation of the right to communicate under the First Amendment. Also, Plaintiff fails to identify any policy, custom or practice implemented by Defendant Sheriff Rutherford that would warrant municipal liability. Thus, Plaintiff is not entitled to relief against Defendant City of Jacksonville or against Defendant Sheriff Rutherford in his official capacity under a theory of municipal liability. Therefore, Defendants City of Jacksonville and Sheriff Rutherford's Motion to Dismiss is due to be granted alternatively based on the insufficiency of Plaintiff's allegations of a policy, practice or custom that was the moving force behind a constitutional violation.

---

[19] Plaintiff's claim of retaliation by Defendant Deputy Holochwost constitutes a claim against an individual employee, and the City would not be vicariously liable under section 1983.

### D.  Qualified Immunity

Also in the alternative, Defendants Sheriff Rutherford and Deputy Holochwost claim they are entitled to qualified immunity. Plaintiff concedes that Defendant Sheriff Rutherford is entitled to qualified immunity in his individual capacity.  Response at 8. Plaintiff does not, however, concede that Defendant Deputy Holochwost is entitled to qualified immunity.  The Eleventh Circuit has said:

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity.  Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).  This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Under Saucier, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act.  533 U.S. at 201, 121 S.Ct. at 2156.  If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. Holloman, 370 F.3d at 1264.

Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), cert. denied, 559 U.S. 940 (2010).  Following the United States Supreme

- 29 -

Court's decision in <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009), this Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam) (citation omitted).

Defendant Deputy Holochwost was acting in his discretionary capacity as a Deputy at the PTDF. As previously found, Plaintiff has stated a First Amendment claim of retaliation by alleging that Defendant Deputy Holochwost's actions were the result of Plaintiff having filed a grievance concerning the conditions of his confinement. <u>See</u> <u>Hale v. Sec'y Dep't of Corr.</u>, 345 F. App'x 489, 492 (11th Cir. 2009) (per curiam). The remaining question is whether the constitutional right was clearly established. <u>Crenshaw v. Lister</u>, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam) (quoting <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008)). Upon review of the law, the undersigned finds that the right was clearly established. <u>See</u> <u>Bennett</u>, 423 F.3d at 1250. Thus, Defendant Deputy Holochwost is not entitled to qualified immunity on the First Amendment claim of retaliation.

Based on the above, qualified immunity is due to be granted to Defendant Sheriff Rutherford. In addition, qualified immunity is due to be denied to Defendant Deputy Holochwost as to the retaliation claim, the only viable remaining claim against Defendant Deputy Holochwost.

## E.  Standing

Alternatively, Defendants the City of Jacksonville, Sheriff Rutherford, and Deputy Holochwost contend that Plaintiff does not have standing because he is no longer confined in the PTDF. Indeed, Plaintiff has been released from the Florida Department of Corrections.  It is quite apparent that Plaintiff is no longer confined in the PTDF or subjected to the conditions of confinement at the PTDF.  Therefore, any claims for injunctive and declaratory relief are moot.[20]

> Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was filed. The doctrine of mootness provides that the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).

KH Outdoor, L.L.C. v. Clay Cnty., Fla., 482 F.3d 1299, 1302 (11th Cir. 2007) (quotations and citations omitted).  "The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."  Smith v. Allen, 502 F.3d 1255, 1266 (11th

---

[20] Plaintiff's suggestion that he might one day return to the PTDF for an evidentiary hearing on a property issue is both remote and speculative.  Response at 8.  The requisite personal interest has not continued throughout the existence of the litigation because Plaintiff is no longer confined in the PTDF.

Cir. 2007) (citations omitted), <u>abrogated on other grounds</u>, <u>Sossamon v. Texas</u>, 131 S.Ct. 1651, 1657-63 (2011).

Based on the above, Plaintiff's claims for injunctive and declaratory relief against Defendants City of Jacksonville, Sheriff Rutherford, and Deputy Holochwost are due to be dismissed as moot as Plaintiff is no longer subjected to the conditions of confinement in the PTDF.

### F. Prison Litigation Reform Act - Physical Injury

Plaintiff states he is seeking monetary damages "within the jurisdictional limits of the court."  Third Amended Complaint at 12.  His action for compensatory damages against the Defendants for mental or emotional injuries is barred by 42 U.S.C. § 1997e(e) as long as Plaintiff remains incarcerated.  Section 1997e(e) "applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." <u>Napier v. Preslicka</u>, 314 F.3d 528, 532 (11th Cir. 2002), <u>cert. denied</u>, 540 U.S. 1112 (2004).  Thus, pursuant to § 1997e(e), a prisoner bringing a § 1983 action must demonstrate a physical injury that is more than <u>de</u> <u>minimus</u> in order to recover compensatory or punitive damages for mental or emotional injury suffered while in custody.  <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011); <u>Hale</u>, 345 F. App'x at 491-92 (citation omitted). An action barred by § 1997e(e) is barred only during imprisonment. Here, Plaintiff does not allege any physical injury as a result of Defendants' actions.  Thus, his claims to recover compensatory

damages for mental or emotional injury are barred during his imprisonment.

As noted above, Plaintiff's claims to recover compensatory damages against Defendants the City of Jacksonville, Sheriff Rutherford and Deputy Holochwost, except to the extent that he is seeking nominal damages against Defendant Holochwost for retaliating against Plaintiff for filing grievances, are due to be dismissed. The claim for nominal damages to remedy a First Amendment violation is not barred pursuant to 42 U.S.C. § 1997e(e). Hale, 345 F. App'x at 491-92.

### G. Violations of Other Federal or State Law

In his Third Amended Complaint, Plaintiff states that there have been "violations of federal and state law and for common law fraud." Third Amended Complaint at 1. This vague and conclusory allegation of violations of federal and state law will not withstand City/Officers' Motion to Dismiss and GTL's Motion to Dismiss. Plaintiff did, however, specifically allege that Defendants violated the FDUTPA (§ 501.204, Fla. Stat.) and the attorney-client privilege under § 90.502, Fla. Stat. Third Amended Complaint at 5, 7.

The reference to the attorney-client privilege apparently goes to Plaintiff's Sixth Amendment claim that he was unable to speak freely with his counsel over the telephone to prepare his defense, and as a result, the defense prepared was deficient in some way. As noted previously, such a claim is not cognizable under Heck.

Valdez, 302 F.3d at 1049.  Plaintiff has not alleged or suggested that his conviction has been invalidated; therefore, any claim for money damages is barred under Heck.  Thus, this claim is due to be dismissed as well.[21]

Also, although not a model of clarity, Plaintiff's focus of the FDUTPA claim goes to GTL's actions.  Plaintiff contends that GTL is over-charging customers excessive, exorbitant, and unreasonable rates and has committed common law fraud.  Thus, this matter will be addressed in section H below considering GTL's Motion to Dismiss.

The general claim that all of the Defendants violated other federal and state law is due to be dismissed.  In addition, any claim concerning the attorney-client privilege is due to be dismissed since it apparently goes to a Sixth Amendment claim that is not cognizable in this civil rights action.

## H.  Filed Rate Doctrine

Plaintiff claims that he is being charged excessive, exorbitant, and unreasonable rates for collect telephone calls at the PTDF by GTL.  He also alleges GTL has committed common law fraud.  In GTL's Motion to Dismiss, it is asserted that all of Plaintiff's claims, including those for money damages under Florida common law and the FDUTPA, are barred under the filed rate

---

[21] A Sixth Amendment claim would properly be raised in a petition for writ of habeas corpus seeking post-conviction relief.

doctrine.  GTL's Motion to Dismiss at 7; see Am. Tel. and Tel. Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 222-23 (1998) (prohibiting telecommunication carriers from charging rates or providing services other than as set forth in the applicable tariff and recognizing the strict application of this doctrine).

"The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable." Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994).  It matters not whether the actions are based on regulations by a state or federal rate-making authority; the actions are barred. Id. at 20; Taffet v. S. Co., 967 F.2d 1483, 1494 (11th Cir.), cert. denied, 506 U.S. 1021 (1992).  In addition, there is no fraud exception to the filed rate doctrine.[22] Wegoland Ltd., 27 F.3d at 20-21.

The filed rate doctrine is meant to ensure (1) nondiscrimination, and (2) nonjusticiability.  Hill v. Bellsouth Telecomms., Inc., 364 F.3d 1308, 1316 (2004).  "The purpose of the

---

[22] Rule 9(b) of the Federal Rules of Civil Procedure provides a party must state his averments of fraud with particularity.  "The elements of common law fraud are 1) a false statement of fact, 2) known by the person making the statement to be false at the time it was made, 3) made for the purpose of inducing another to act in reliance thereon, 4) action by the other person in reliance on the correctness of the statement, and 5) resulting damage to the other person." Tucci v. Smoothie King Franchises, Inc., 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002) (citation and internal quotation marks omitted).  Plaintiff has failed to allege sufficient facts supporting a common law fraud claim; therefore, the common law fraud claim is due to be dismissed.

nondiscrimination principle underlying the filed rate doctrine is to ensure that all telecommunications customers are charged the same rate for their service - the rate filed with and approved by the FCC." Id. (citation omitted). With respect to the second principle underlying the filed rate doctrine, the Eleventh Circuit has explained:

> The purpose of the nonjusticiability principle underlying the filed rate doctrine is to preserve the FCC's primary jurisdiction over determinations regarding the reasonableness of rates charged by regulated carriers. Arkansas Louisiana Gas, 453 U.S. at 577-78, 101 S.Ct. at 2930. This principle "prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority." Marcus, 138 F.3d at 61. **Thus, even if a claim does not directly attack the filed rate, an award of damages to the customer that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine.**

Hill, 364 F.3d at 1317 (emphasis added).

The Court agrees with GTL that Plaintiff's attempt to seek an award of monetary damages for the rates charged by GTL for telephone services at the PTDF implicate the nondiscrimination and nonjusticiability principles of the filed rate doctrine. Thus, Plaintiff's claim for monetary damages is barred under the filed rate doctrine. To the extent that Plaintiff is seeking injunctive or declaratory relief to be excused from certain charges, such relief is barred by the filed rate doctrine as well. See Pfeil v. Sprint Nextel Corp., 284 F. App'x 640, 643 (11th Cir. 2008) (per

curiam).  Since there is no fraud exception to the filed rate doctrine, Plaintiff cannot prevail on a common law fraud claim.

Also, Plaintiff has failed to establish a claim for violation of FDUTPA that is plausible on its face.  To establish a violation of the FDUTPA, Plaintiff must allege that GTL's "practice was likely to deceive a consumer acting reasonably in the same circumstances."  Id. (citation omitted).  Here, a reasonable consumer would be charged with knowledge of the filed tariff.  See Pfeil, 284 F. App'x at 643 (finding same).  In addition, to the extent Plaintiff is claiming that he was subjected to fraudulently inflated rates above the posted rates, there is no fraud exception to the filed rate doctrine.  Wegoland Ltd., 27 F.3d at 21 (acknowledging that the tasks of determining a reasonable rate and determining whether damages arose from fraud to be "hopelessly intertwined"); Hill, 364 F.3d at 1316 (recognizing that if a customer was able to prove his claim and recover damages, he "'would effectively receive a discounted rate for phone service over [ ] other customers'") (quoting Marcus, 138 F.3d at 60).  Finally, to the extent that Plaintiff is more generally claiming that he was charged excessive rates, a challenge to excessive telephone rates for those confined in jail or prison will consistently fail without a showing that the detainee has been prevented from communicating with the outside world; therefore, the claim of being charged excessive rates is due to be dismissed.  Holloway, 2011 WL 204891, at *4.  GTL's Motion to Dismiss is due to

be granted under the filed rate doctrine.  Additionally, GTL's Motion to Dismiss is due to be granted as to the common law fraud claim.

## I.  Color of State Law

In the alternative, GTL argues that even if Plaintiff adequately presents a constitutional violation, GTL does not operate under color of state law because GTL is a private entity that provides telephone services for the PTDF.  Under 42 U.S.C. § 1983, a plaintiff must allege the defendant deprived him of a right secured under the Constitution or federal law, and the defendant acted occurred under color of state law.  Richardson, 598 F.3d at 737 (citations omitted).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, (1941)).  For example, since the state has a constitutional duty to provide medical care to inmates, a private physician who contracts with the state to provide medical care to inmates acts under color of state law for purposes of section 1983 when treating an inmate.  Carswell v. Bay Co., 854 F.2d 454, 456-57 (11th Cir. 1988).  The simple allegation that GTL is a telephone service provider under contract with the PTDF does not establish that GTL is a state actor within the meaning of section 1983.

- 38 -

"Phone service is not a 'traditionally exclusive government function,'" Streater v. Thaler, No. 9:11cv68, 2012 WL 3308109, at *13 (E.D. Tex. July 2, 2012) (quoting Evans v. Skolnik, No. 3:08-cv-353-RCJ-VPC, 2009 WL 3763041, at *5 n.4 (D. Nev. Nov. 5, 2009)), report and recommendation adopted, 2012 WL 3308105 (E.D. Tex. Aug. 13, 2012), nor has Plaintiff provided any other basis upon which to find GTL liable under 42 U.S.C. § 1983.

Upon review, Plaintiff has failed to satisfy the second prong of the requirements to state a plausible claim under 42 U.S.C. § 1983. See Wofford v. Pub. Comm. Servs., No. 4:11-CV-1884-JCH, 2012 WL 550134, at *3 (E.D. Mo. Feb. 19, 2012) (finding allegation that an inmate telephone service provider was under contract with a correctional facility was not sufficient to allege state action within the meaning of section 1983). Indeed, Plaintiff's section 1983 claims against GTL are due to be dismissed as GTL did not act under color of state law.

GTL requests that the claims against it should be dismissed with prejudice, citing Jackson v. Genesys Credit Mgmt., No. 06-61500-CIV, 2007 WL 4181024, at *4 (S.D. Fla. Nov. 21, 2007) (not reported in F. Supp. 2d) and Shell v. U.S. Dep't of Hous. and Urban Dev., 355 F. App'x 300, 307-08 (11th Cir. 2009) (per curiam), for the proposition that when plaintiffs are given repeated opportunities to amend their claims but fail to cure deficiencies, the cases should be dismissed with prejudice. Neither of the cases cited, however, appear to concern the pleadings of a pro se inmate.

- 39 -

A <u>pro</u> <u>se</u> inmate's allegations must be read in a liberal fashion. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  Plaintiff made a good faith effort to amend his allegations to support his claims.  <u>Cf.</u> <u>Shell</u>, 355 F. App'x at 307 (finding the plaintiff failed to "meaningfully" amend his complaint, and instead filed numerous motions, responses and interlocutory appeals).  Additionally, the undersigned is not entirely convinced that any amendment would be futile.  Thus, the claims against GTL are due to be dismissed without prejudice.[23]

## VI.  Recommendations

After due consideration, it is

**RECOMMENDED:**

1.   That Defendants City of Jacksonville, Sheriff John H. Rutherford and Deputy Timothy C. Holochwost's Motion to Dismiss Third Amended Complaint With Prejudice (Doc. #49) be **GRANTED, in part, and DENIED, in part,** as follows:

   A.   As to Defendants City of Jacksonville and Sheriff Rutherford, the Motion be **GRANTED** and all claims against Defendants City of Jacksonville and Sheriff Rutherford be **DISMISSED with prejudice.**

   B.   As to Defendant Holochwost, the Motion be **GRANTED** to the extent that all claims, except the claim of nominal damages for retaliation, be **DISMISSED with prejudice**, and **DENIED** as to Plaintiff's claim of nominal damages for retaliation.

---

[23] This does not, however, mean that the undersigned is convinced that Plaintiff is going to be able to present valid claims.

2.    That Defendant Global Tel-Link's Motion to Dismiss Plaintiff's Third Amended Complaint With Prejudice (Doc. #50) be **GRANTED** to the extent that all claims against Defendant Global Tel-Link be **DISMISSED without prejudice**, and otherwise **DENIED**.

3.    That Jacksonville Sheriff's Office be **DISMISSED with prejudice**.

4.    That Plaintiff be allowed to submit an amended complaint consistent with the foregoing within **THIRTY (30) DAYS** from the date of the entry of an Order on this matter.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida, this 18th day of July, 2013.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

sa 7/11
c:
The Honorable Marcia Morales Howard
Herbert J. T. Wilson, II (at address
listed on docket, as well as
200 Ohio Ave., Live Oak FL 32064)
Counsel of Record